1   Kristen Law Sagafi (State Bar No. 222249)
    ksagafi@lchb.com
2   LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
    275 Battery Street, 29th Floor
3   San Francisco, CA  94111-3339
    Telephone:  (415) 956-1000
4   Facsimile:  (415) 956-1008

5   Jonathan D. Selbin (State Bar No. 170222)
    jselbin@lchb.com
6   LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
    250 Hudson Street, 8th Floor
7   New York, NY 10013-1413
    Telephone:  (212) 355-9500
8   Facsimile:  (212) 355-9592

9   (Additional Counsel listed below)

10  Attorneys for Plaintiff and the Class

11

12                    UNITED STATES DISTRICT COURT

13                   NORTHERN DISTRICT OF CALIFORNIA

14

15  DANIEL WOLF, individually and on        Case No.  4:10-cv-02436-DMR
    behalf of all others similarly situated,
16                                           **FIRST AMENDED CLASS ACTION
                    Plaintiff,               COMPLAINT**
17
    v.                                       **(1)  California Unfair Competition Law,
18                                                  Business and Professions Code § 17200,
    SONY COMPUTER ENTERTAINMENT                     *et seq.*;
19  AMERICA LLC, SQUARE ENIX OF              (2)  California Consumer Legal Remedies
    AMERICA HOLDINGS, INC., and                    Act, Civil Code § 1750, *et seq.*;
20  SQUARE ENIX, INC.,                       (3)  breach of express warranty;
                                             (4)  breach of implied warranty of
21                  Defendants.                    merchantability;
                                             (5)  strict products liability;
22                                           (6)  negligence; and
                                             (7)  alternative relief based on quasi contract**
23

24

25                                           **DEMAND FOR JURY TRIAL**

26

27

28

CLASS ACTION COMPLAINT
                                             CASE NO. _____

## I.  INTRODUCTION

Plaintiff Daniel Wolf individually and on behalf of all others similarly situated and on behalf of the general public complains against Defendant Sony Computer Entertainment LLC. and Defendants Square Enix of America Holdings, Inc. and Square Enix, Inc. (collectively "Square Enix,") individually and through any affiliates, parents, subsidiaries, divisions, departments, or agents as follows:

1.     This action concerns the blockbuster video game Final Fantasy XIII, and the severe property damage the game causes when played in conjunction with Playstation 3 ("PS3") gaming consoles.

2.     Final Fantasy XIII was released for sale in North America on March 9, 2010. Since that time, millions of consumers, including Plaintiff, have purchased and played the game on their PS3 consoles.  For a significant number of those consumers, playing Final Fantasy XIII caused their PS3 consoles to freeze and become totally and permanently inoperable, a phenomenon called "bricking."  A consumer whose PS3 "bricks" becomes unable to play any games, watch any movies, or otherwise make use of their PS3 console.  Many other consumers have suffered malfunction short of bricking, such as the total inability to play Final Fantasy XIII without constant freezing.

3.     The Internet is awash with consumer complaints arising from the use of Final Fantasy XIII video game discs on PS3 game consoles.  These complaints detail the drastic damage caused by Final Fantasy XIII to PS3's, and the measures Defendants have taken to prevent consumers from recovering for their damaged systems.

4.     Consumer complaints pervasively describe the purchase of a PS3 game system for up to $600, subsequent purchase of a supposedly PS3-compatible version of Final Fantasy XIII for approximately $60, and resulting PS3 system inoperability or outright failure when the two products are used together for their intended purposes.

5.     In response to voluminous consumer complaints, Defendants have taken to blaming the problem on each other.  Consumers complaining to Defendant Sony are told that the problem is with the Final Fantasy XIII product, not the system, and that the consumers must pay

CLASS ACTION COMPLAINT
CASE NO. _____

Sony up to $200 to repair the system. Consumers complaining to Defendant Square Enix, the designer and marketer of Final Fantasy XIII, are told the problem is with the PS3 system and that Square Enix will only provide a replacement game. Of course, the defective game Defendant Square Enix offers as a remedy is one of the alleged causes of the losses suffered by Plaintiff and the Class.

6.     Neither Defendant has agreed to cover the cost of repairing consumers' PS3's, which were damaged by doing nothing more than playing a designated PS3 game on a PS3 gaming system.

7.     Plaintiff brings this action on behalf of all purchasers of Final Fantasy XIII for PS3. Simply put, this clearly designated PS3-compatible game cannot be played on Sony's PS3 system without the game freezing and becoming unplayable, damaging the PS3, destroying the PS3's functionality altogether, posing substantial a risk of damage to consumers' very expensive PS3 systems, or a combination of these results.

8.     By selling products that purported to be safe and compatible with one another, and instead selling products that cannot be used without incurring substantial property damage and economic loss, Defendants have each violated California's Unfair Competition Law, Business & Professions Code § 17200 *et seq.* ("UCL"), the Consumer Legal Remedies Act, California Civil Code § 1750 *et seq.* ("CLRA"), breached their express and implied warranties, are liable for negligence and strict products liability, and are liable for unjust enrichment under a theory of quasi-contract. Plaintiff and all members of the Class are entitled to restitution, damages, equitable relief, and any and all other available remedies.

9.     Since Defendants engaged in their misconduct with respect to Plaintiff's purchased products in the exact same manner as to numerous other consumers, a class action is the superior means of resolving this issue for all affected consumers.

## II.  PARTIES

10.     Plaintiff Daniel Wolf is a resident of California and resides in San Diego, CA.

11.     Defendant Sony Computer Entertainment LLC ("Sony") is a Delaware corporation, which maintains its headquarters and principal place of business at 919 E Hillsdale

Blvd, Foster City, CA 94404.  Sony develops, markets, and sells PlayStation video gaming consoles, including the PlayStation 3 ("PS3").  It was founded as the North American Division of Sony Computer Entertainment LLC.

12.     Defendant Square Enix of America Holdings, Inc. is a Delaware corporation with its principal place of business in the City of El Segundo, County of Los Angeles, and State of California.  Square Enix of America Holdings was established in 2006 to control management and operations of the company's subsidiaries in North America.

13.     Defendant Square Enix, Inc. is a Washington corporation with its principal place of business in the City of El Segundo, County of Los Angeles, and State of California.  Square Enix designs, develops, markets and sells video games, including Final Fantasy XIII.  Square Enix, Inc. is involved in the development, localization, marketing, and publishing of Square Enix titles.

### III.  JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because at least one Class member is of diverse citizenship from the Defendants; there are more than 100 Class members nationwide; and the aggregate amount in controversy exceeds $5,000,000.  This Court has personal jurisdiction over the parties because Defendants each conduct substantial business in this State, have had systematic and continuous contacts with this state, and has agents and representatives that can be found in this state.

15.     Venue is proper in this District under 28 U.S.C. § 1391(a) because a substantial part of the events giving rise to the claims occurred and emanated out of this District, and Defendants have injured Class members residing in this District.  Defendant Sony transacts business and maintains its headquarters and principal place of business within this District.  This Court accordingly has jurisdiction over this action and venue is proper in this Judicial District.

**IV.  INTRADISTRICT ASSIGNMENT**

16.     Pursuant to Local Rules 3-2(c) and 3-5(b), this action should be assigned to the

San Francisco Division of California because Defendant Sony resides in Foster City, CA, which

is in the County of San Mateo.

**V.  APPLICATION OF CALIFORNIA LAW**

17.     California law applies to the claims and issues asserted herein.  Plaintiff, who

asserts his claims against Sony Computer Entertainment LLC and Defendants Square Enix of

America Holdings, Inc. and Square Enix, Inc., all corporations residing and having their principle

places of business in California, seeks damages and equitable relief on behalf of himself and all

other persons and entities similarly situated, under the laws of the State of California.

18.     California has significant contacts and/or a significant aggregation of contacts to

the claims asserted by Plaintiff and all Class members.

19.     California has a materially greater interest than any other State in enforcing the

rights and remedies granted to California consumers under the California laws invoked in this

Complaint.  These rights and remedies further strong fundamental public policies of the State of

California.

**VI.  SUBSTANTIVE ALLEGATIONS**

**A.     <u>Final Fantasy XIII's Threat to the PS3 Gaming System</u>**

20.     The misconduct underlying this action is not complex.  Despite being on the

market for only a few months, the blockbuster video game Final Fantasy XIII has caused severe

and widespread damage to Sony PS3 gaming systems.

21.     Defendants Sony and Square Enix, both operating out of California, visibly labeled

and co-branded Final Fantasy XIII as compatible with PS3 systems.  The two products are clearly

not compatible, as using them together causes a substantial threat that a consumer's expensive

PS3 system will crash and become totally inoperable, a phenomena called "bricking."  The term

"bricking" refers to the notion that after a Final Fantasy XIII disc destroys a PS3, the PS3's only

remaining use is as a brick or paperweight.

22.     Since the March 2010 release of Final Fantasy XIII, Defendants Sony and Square Enix have been deluged with consumer complaints regarding the danger posed by attempting to play this PS3 game on the PS3 system.  Complaints describe the inability to play Final Fantasy XIII without continuous "freezing," which makes the game worthless to the consumer even if it does not "brick" the PS3 system entirely.  Such freezing substantially diminishes the value of the PS3, which consumers, by definition, purchased for the purpose of playing PS3 games.

23.     Other consumer complaints describe far more serious problems, including complete devastation of the PS3 system.  Volumes of consumers have reported that when continuing to play Final Fantasy XIII following incidences of "freezing," their PS3 froze permanently and became unable to read any video game discs, or movie discs, of any kind.  In other words, playing the PS3-branded version of Final Fantasy XIII on the PS3 system caused their system to completely cease functioning.

24.     Defendants have developed standard, evasive responses to complaining consumers.  Defendant Square Enix has routinely blamed the issue on Defendant Sony's PS3 system and offered consumers a (defective) replacement game as a remedy.  Defendant Sony, in turn, has blamed the issue on Final Fantasy XIII, which was designed, manufactured, and marketed by Defendant Square Enix.  As a remedy, Defendant Sony has offered to fix consumers' broken, inoperable PS3 systems for upwards of $200.

25.     Neither Defendant has offered to cover the cost of repairing consumers' damaged PS3 systems.  Neither Defendant has attempted to recall or disseminate a "fix" for either the PS3 system or Final Fantasy XIII game.  Neither Defendant has attempted to make the public aware of the danger posed by their products being used together.

26.     Both Defendants are eminently aware of the damage being caused by their defective products, and have chosen to do nothing about it.  Many consumers have informed both Defendants and explicitly informed them of the problems described herein.

27.     In addition to telephoned, emailed, and written complaints, numerous consumers have posted complaint videos to www.youtube.com.  These videos detail the widespread

1  phenomena of Final Fantasy XIII freezing during game play, and ultimate destruction of the PS3

2  altogether when consumers attempt to continue playing.

3        28.      One of the largest collection of consumer complaints and descriptions of the issue

4  is found directly on Defendant Sony's own official Playstation 3 website, and can be found,

5  among other places, at:  http://boardsus.playstation.com/t5/PlayStation-3-General/Final-Fantasy-

6  13-bricked-my-PS3/m-p/45368397 and http://boardsus.playstation.com/t5/Final-Fantasy-

7  Series/Final-Fantasy-XIII-Freezing/td-p/45382189.  The first complaint was posted on March 10,

8  2010 at 12:11 AM, mere hours after the game was released on March 9, 2010.  Over 100

9  incidents of "bricking" due to the use of Final Fantasy XIII on the PS3 are reported on Sony's

10  Playstation 3 website.

11        29.      The following is a small sample of Internet postings from consumers on Sony's

12  own website regarding the threat posed by using Final Fantasy XIII in conjunction with the PS3:

13  •  "30 minutes later I go to save my game and get the same error message…
14     can't save the game at all now.  ¶So I restart my ps3 and get the dreaded
       "Can't start – correct hard disk not found"  ¶So it looks like my PS3 is now
       bricked because I wanted to make sure I had a backup save.  ¶thanks final
15     fantasy 13 and sony  (03-10-2010  12:11 AM)

16  •  "I exchanged the game and nothing has changed.  It is just me with this
       game that I have been waiting for years for and I can't even play it because
17     13 hours in and it is buggy[.].  Great I am so happy to own an unplayable
       game."  (03-13-2010  02:29 AM)
18

19  •  "I called Sony, they just walked me through restoring my PS3 defaults, no
       good, same freeze after a few minutes of loading my last save point.  I
20     spoke with a supervisor who said he hadn't heard of any issues like this
       and that he would escalate it up the chain.  Sent a nice email to Square-
21     Enix about it also."  (03-13-2010  04:28 PM)

22  •  "Never had a problem until I put in [Final Fantasy XIII.]  Now the PS3
       won't read ANY disc: game or media.  Followed all the troubleshooting
23     protocols.  Thanks to [Square Enix] I have to pay $200 to ship it off to
       Sony.  If there is a Class Action Lawsuit in the works I will be signing up,
24     this is ludicrous, I'm very disappointed, going to return the game and never
       touch a [Square Enix] game again.  ¶For $200 you might as well consider
25     this a bricked unit.  (03-14-2010  07:24 PM)

26  •  "I hope someone figures out who's to blame here and there is a fix.  I
       called [Square Enix] and they blamed Sony."  (03-22-2010  07:52 PM)

27  •  "I have a 60 GB ps3 and I cant play Final Fantasy 13 for more than 35
       minutes without it FREEZING!!!!  My game has froze more than 20 times
28     now and im afraid to play it anymore cuz I know it will inevitably break

my system.  I have never had a problem until I played this game… I called [Square Enix] and sony today and the people at [Square Enix] were complete [*******.]  They actually had the nerve to tell me that the people on youtube [complaining about Final Fantasy XIII] were lying and that im the first one to call and complain."  (03-22-2010  09:45 PM)

- "Same exact thing happened to me too although I have a 60GB system.  I was over 50 hours in and then it started freezing.  Other games were fine for 2 days afterward until it stopped reading discs altogether.  The same thing will probably happen to you too."  (03-30-2010  08:16 PM)

- "well you can also add me to the list.  I completed the game without any issues but my fiancé decided she wanted to play the game and bricked the system after playing for an hour[.]"  (04-07-2010  12:56 PM)

- "just got off the phone with Sony and all the guy did was deny that they have been notified about the problem."  (04-07-2010  03:32 PM)

- "Its amazing to me that this issue has hit 46 pages and theres no clear solution.  My ps3 has totally bricked now, after 2 [Final Fantasy XIII] freezes, it won't load any blurays now for more than maybe 20 mins without freezing."  (04-14-2010  10:41 PM)

- "I just broke a second (brand new) laser by playing [Final Fantasy XIII] for 2 hours.  There was no other usage on this laser except Rock Band 2 to test the laser."  (04-15-2010  08:20 PM)

- "I have a 80GB PS3 console and i probably played for whopping 20 minutes before this problem occurred."  (04-24-2020  09:58 PM)

- "[Final Fantasy XIII] pretty much just killed my PS3… Blu-Rays won't play on it… I just spent another 150 bucks getting this fixed through Sony and [Final Fantasy XIII] just killed it again… I've never had any issues with any of my consoles [before.]"  (04-28-2010  01:37 AM)

30.     As this small sampling of complaints make clear, both Sony and Square Enix have been fully advised of the defects in their products and the damage being caused by these defects.

**B.     Plaintiff Wolf's Injury Suffered by Attempting to Play the PS3-Branded Final Fantasy XIII on His PS3 System**

31.     Plaintiff Wolf purchased a PS3 gaming system in August 2007 for approximately $500.  He purchased a copy of the PS3-branded version of Final Fantasy XIII in March 2010 for approximately $60 on the day it was released for sale in the United States.

32.     After playing Final Fantasy XIII, Plaintiff Wolf attempted to save the game to the system and the system froze and became totally unresponsive.  He attempted to restart the system and it would not start or read the disc at all.  Plaintiff Wolf attempted to play other games and

1   movies and the machine remained totally unresponsive.  His system could no longer read the

2   Final Fantasy XIII game disc, any other game disc, or any other disc of any kind.  The system had

3   "bricked."

4         33.     Plaintiff Wolf contacted Defendant Sony to inform it of his problem.  Defendant

5   Sony informed Plaintiff Wolf he had three options:  (1) pay $270 and Sony would fix the system;

6   (2) pay $270 and Sony would not fix the system and would send it back to him unfixed; or

7   (3) pay $150 for a different, "refurbished" PS3 model that could not play older PS2 games and

8   lacked other functionality of the PS3 system he originally purchased.  Plaintiff Wolf asked Sony

9   that if he chose to fix his existing machine, if Sony could guarantee that it would not just "brick"

10  again.  Alternatively, Plaintiff Wolf asked if he could purchase an extended warranty.  Defendant

11  Sony refused both requests.  Ultimately, Plaintiff Wolf chose the third option, accepting a

12  different, "refurbished" model with less functionality than the PS3 he purchased, because he

13  could not afford the more expensive options.

14        34.     Plaintiff Wolf contacted the retailer where he purchased his Final Fantasy XIII

15  game and received a replacement disc.  It would not play at all in his PS3 system.

16        35.     Plaintiff Wolf contacted Defendant Square Enix to inform it that his PS3 system

17  was destroyed upon playing Final Fantasy XIII.  Despite having been informed by numerous

18  other consumers of the problems with its product, Defendant Square Enix denied any knowledge

19  whatsoever.  Defendant Square Enix told Plaintiff Wolf it refused to "address issues with your

20  PS3 system that are not occurring in other systems."  Defendant Square Enix alternatively invited

21  Plaintiff Wolf to see if his disc would destroy another PS3 system and if it did not, "please

22  contact Sony."  Alternatively, Defendant Square Enix offered to provide him another copy of the

23  PS3-branded version of Final Fantasy XIII, the game that had just destroyed his PS3 system.

24        36.     Plaintiff Wolf had never experienced this type of problem before attempting to use

25  Final Fantasy XIII in his PS3.  He always used his PS3 system in a normal fashion.  In fact,

26  Plaintiff Wolf also owns a PS2 system, which is Defendant Sony's now-outdated prior version of

27  its Playstation series.  Plaintiff Wolf has owned his PS2 system for 10 years and it still works

28  normally.

37.     Plaintiff Wolf has suffered injury due to the misconduct described herein. Defendants have each received sums of money traceable to Plaintiff Wolf's purchases.  Plaintiff Wolf, on the other hand, has a PS3 that was rendered totally inoperable simply by attempting to play a PS3-branded video game, Final Fantasy XIII.  Both Plaintiff Wolf's PS3 and his Final Fantasy XIII game are worthless because each contains defects that make it impossible to make normal use of the products without incurring the threat of incurring, or actually incurring, damage and economic loss.

**C.     <u>Statutes of Limitation</u>**

38.     *Discovery Rule.*  The causes of action alleged herein accrued upon discovery that the Sony PS3 system could not play Final Fantasy XIII without the risk of substantial damage to the system, or suffering damage in fact.  Because all of the Defendants represented to Plaintiff and members of the Class that the PS3-branded version of Final Fantasy XIII could be played safely and normally on the PS3 system, Plaintiff and members of the Class did not discover and could not have discovered that this was not possible through reasonable and diligent investigation prior to incurring an injury.

39.     *Fraudulent Concealment Tolling.*  Any applicable statutes of limitation have been tolled by Defendants' knowing and active concealment and denial of the facts as alleged herein, which concealment is ongoing.  Defendants have kept Plaintiff and the Class ignorant by denying the problems described herein, blaming the problems on one another, and withholding vital information essential to the pursuit of these claims.  Plaintiff and members of the Class could not reasonably have discovered that playing Final Fantasy XIII on the PS3 system would cause injury.

40.     *Estoppel.*  Defendants were and are under a continuous duty to disclose to Plaintiff and the Class the true character, quality, and nature of the PS3 system and Final Fantasy XIII video game product.  Defendants knowingly and affirmatively misrepresented and actively concealed the true character, quality, and nature of these products.  Plaintiff reasonably relied upon Defendants' knowing and affirmative misrepresentations and/or active concealment.  Based

on the foregoing, Defendants are each estopped from relying on any statutes of limitation in defense of this action.

## VII.  CLASS ACTION ALLEGATIONS

41.     Plaintiff brings this action on behalf of a class of persons pursuant to Fed. R. Civ. P. 23.

42.     The Class consists of:

> All United States residents who purchased Final Fantasy XIII for
> Playstation 3.

Specifically excluded from the Class are the Defendants and their employees, as well as all employees of the Court.  Specifically included in the class are Final Fantasy XIII buyers, who received a game that cannot be played on PS3 gaming systems without incurring, or the threat of incurring, substantial economic loss and damage to their system.

43.     The members of the Class are so numerous that joinder of all members is impracticable.  While the number of class members is unknown to Plaintiff at this time, Plaintiff is informed and believes that the Class numbers in the thousands.

44.     There is a well-established community of interest in the questions of law and fact affecting the parties to be represented in this action.

45.     There are questions of law and fact common to the Class which predominate over questions solely affecting individual members of the Class.  These common questions of law and fact include, but are not limited to:

    a.     Whether Defendant Sony offered Playstation 3 for sale to the public;

    b.     Whether Defendant Square Enix offered Final Fantasy XIII for sale to the public;

    c.     Whether the PS3 gaming system is defective;

    d.     Whether the Final Fantasy XIII product is defective;

    e.     Whether Defendants knew of any defects inherent in the PS3 product;

    f.     Whether Defendants knew of any defects inherent in the Final Fantasy XIII product;

g.    Whether Plaintiff and members of the Class have suffered damage;

h.    Whether Defendants have refused to remedy the damage and loss caused by the use of their products for their intended purposes;

i.    Whether Defendants' misconduct described herein is unfair in violation of Cal. Bus. & Prof. Code § 17200 *et seq.*;

j.    Whether Defendants' misconduct has violated Cal. Civ. Code § 1750, *et seq.*;

k.    Whether Defendants have breached their express warranties;

l.    Whether Defendants have breached their implied warranties;

m.    Whether Defendants are liable for negligence;

n.    Whether Defendants are liable under strict products liability;

o.    Whether Defendants are liable for the losses suffered by Plaintiff and the Class under an alternative theory of quasi-contract;

p.    Whether Defendant should provide restitution to Plaintiff and the Class; and

q.    What is the amount and type of damages and other relief to be awarded to Plaintiff and the Class?

Resolving these issues for Plaintiff or any other class member will also resolve the claims of the entire Class.

46.    Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff has the same interests as all members of the Class in that the nature and character of the challenged conduct is the same. Plaintiff and all members of the Class challenge Defendant's conduct under the same legal theories. The primary and predominant issue in dispute is whether or not Defendants offered products for sale that could not be used for their represented purposes without the threat of incurring, or in fact incurring, economic loss.

47.    Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff has retained competent counsel experienced in consumer class litigation. Plaintiff is a member of the Class and does not have interests antagonistic to or in

1    conflict with members of the Class.  Neither Plaintiff nor Plaintiff's counsel have any interests

2    that might cause them not to vigorously pursue this claim for the Class.  Plaintiff's claims are the

3    same as those of the claims of the Class, which all arise from the same operative facts and are

4    based on the same legal theories.

5          48.    Certification of the class pursuant to Fed. R. Civ. P. 23(b)(3).  As alleged above,

6    several common questions of fact and law predominate this action.  The overarching issue boils

7    down to this:  Did Final Fantasy XIII create a threat to, or in fact render PS3 gaming consoles

8    inoperable when the two products were used together?  Individualized issues carry no great

9    weight in light of Defendants' obligation to sell products that could be used for their most basic

10   purpose without threat of property damage and economic loss.  The common issues predominate

11   over any individualized ones.

12         49.    A class action is superior to other available methods for the fair and efficient

13   adjudication of this controversy because the membership of the Class is so numerous and

14   sufficiently geographically widespread that joinder of all members is impracticable.  In addition,

15   the prosecution of separate actions by individual members of the Class would create a risk of

16   incompatible standards of conduct for Defendant and inconsistent or varying adjudications for all

17   parties.  There will be no difficulty in the management of this case as a class action.

18         50.    A class action is an appropriate method for the fair and efficient adjudication of

19   this controversy.  The interest of class members in individually controlling the prosecution of

20   separate claims against Defendant is non-existent because it is not feasible for them to bring

21   individual claims.  The nature of the practices complained of, selling a blockbuster video game

22   labeled and warranted to be compatible with PS3 systems, but which is not, makes a class action

23   superior.

24         51.    The number of unfair transactions that took place can be determined through use

25   of Defendants' records, files, ledgers, electronic databases, among other places.

26         52.    Certification of the class pursuant to Fed. R. Civ. P. 23(b)(2) is also appropriate.

27   A representative action under Bus. & Prof. Code § 17200 *et seq.* is appropriate to secure

28

1   restitution for all affected members of the Class and the general public and to obtain injunctive

2   relief.

3       53.   Plaintiff is entitled to an award of attorneys' fees and costs in prosecuting this

4   Complaint against Defendant under Cal. Civ. Code § 1780(e).

5       54.   Plaintiff is also entitled to an award of attorneys' fees and costs pursuant to

6   California Code of Civil Procedure § 1021.5, because:

7           a.   A successful outcome in this action will result in the enforcement of

8               important rights affecting the public interest;

9           b.   This action will result in the cessation of business practices which are

10              unfair, and will result in restitution, disgorgement, or both, of monies

11              which Defendants should not equitably retain, thereby providing significant

12              benefit to the Class and the general public;

13          c.   Private enforcement of this action eliminates the necessity of costly public

14              enforcement during an economic climate in which public resources are

15              strained; and

16          d.   If at all possible, such fees should not, in the interest of justice, be paid out

17              of any recovery.

18                          **VIII.  INJURY**

19      55.   By reason of the above-described conduct and bad faith, Defendant caused actual

20  harm, injury-in-fact, and loss of money to Plaintiff and each member of the Class.  Plaintiff was

21  injured in the following ways:

22          a.   Plaintiff paid approximately $500 for a PS3 gaming console for the

23              purpose of playing PS3-compatible games, which the console represented

24              it could do;

25          b.   Plaintiff paid approximately $60 for the video game Final Fantasy XIII, a

26              product clearly labeled and co-branded with the PS3 name and marks as

27              compatible for use on the PS3 system.  Plaintiff relied on the PS3-

28

1          compatible label prominently displayed on the Final Fantasy XIII

2          packaging when purchasing the game.

3     c.   Plaintiff suffered total failure of his PS3 system as a result of using the

4          Final Fantasy XIII product in conjunction with his PS3 product.  Defendant

5          Sony informed Plaintiff the cost to fix the PS3's damage was nearly $200.

6     d.   If Plaintiff's PS3 system were capable of playing all games marked as PS3-

7          compatible, he would not have suffered the damage and economic loss

8          described herein.

9     e.   If Plaintiff's Final Fantasy XIII game were designed, tested, and

10         manufactured properly to play safely on the PS3 system, Plaintiff would

11         not have suffered the damage and economic loss described herein.

12    f.   Plaintiff would not have purchased a PS3 gaming system had he known it

13         could be damaged or rendered inoperable by playing certain games that

14         were clearly labeled and co-branded with the PS3 name and marks.

15    g.   Plaintiff would not have purchased Final Fantasy XIII had he known the

16         game could not be played without threatening to damage, or in fact

17         damaging, his PS3 in any way.

18    h.   Defendants have refused to pay for the cost of repairing Plaintiffs'

19         damaged PS3, which was damaged by doing nothing more than playing a

20         game clearly labeled and branded as a "PS3 game" on a PS3 system.

21    i.   Plaintiff and members of the Class have each been deprived of $60 cash,

22         the cost of Final Fantasy XIII, requiring restitution.

23    j.   Plaintiff and members of the Class have been deprived of the benefit of

24         their bargains and suffered other damages by purchasing a Sony PS3 which

25         could not play Final Fantasy XIII without a substantial risk of property

26         damage and economic loss.

27    k.   Plaintiff and members of the Class have incurred economic losses due to

28         damage caused to their PS3 systems by playing Final Fantasy XIII games

that were clearly labeled and co-branded as compatible with the PS3 system.

## IX.  LEGAL BASES FOR RELIEF

### COUNT I

### (VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW, BUS. & PROF. CODE § 17200 *ET SEQ.*)

56.     Plaintiff incorporates all preceding and succeeding allegations by reference as if fully set forth herein.

57.     Plaintiff brings this action individually, on behalf of the Class, and on behalf of the general public pursuant to § 17200 *et. seq.* of the Bus. & Prof. Code, the Unfair Competition Act.

58.     Plaintiff and members of the Class purchased PS3 gaming systems to play PS3-branded games, and purchased the Final Fantasy XIII video game because they wished to play the game on their PS3 systems.

59.     If Plaintiff and members of the Class knew that Final Fantasy XIII, which was co-branded with the PS3 trademarks, posed a substantial threat of damage and economic loss, they reasonably would not have purchased that game.  Plaintiffs would have purchased a different game or no game at all rather than spend $60 on a game that could destroy a PS3 system costing hundreds of dollars.  Defendants therefore obtained an unfair competitive advantage and obtained Plaintiff's business unfairly.

60.     In addition, by failing to issue a recall, another "fix," or to make consumers aware at all of the problems described herein, Defendant Sony has been able to obtain and retain consumers' money, and also capture repair and other fees from consumers whose PS3 systems have "bricked" or otherwise been damaged by Final Fantasy XIII.  Defendant Square Enix, too, chose not to recall its product or inform consumers of any potential risk and instead kept consumers' money and simply offered a replacement product similar to the one that caused the damage in the first place.

61.     The substantial harm caused by Defendants' business practices outweighs any benefit, justification, or motivation of Defendants.  Plaintiff and other participating consumers

1   could not have reasonably avoided or anticipated Defendants' failure to provide products that

2   were properly designed and manufactured to work as intended.  Their free market decisions were

3   unjustifiably hampered by the conduct of the Defendants.

4          62.     In addition to being unfair, Defendants' business practices were unlawful because

5   they violated the Consumers Legal Remedies Act ("CLRA"), California Civil Code, §§ 1750, *et*

6   *seq.*, breached express and implied warranties, and breached the quasi-contracts each had with

7   Plaintiff and members of the Class.  In addition, Defendants' business conduct was unlawful

8   because it amounted to negligence and strict products liability.

9          63.     California law does not provide any safe harbor for Defendants' misconduct.

10         64.     The acts complained of herein, and each of them, constitute unfair and unlawful

11  business practices in violation of Business and Professions Code § 17200 *et. seq.*  Such acts and

12  violations have not abated and will continue to occur unless enjoined.

13         65.     The unfair and unlawful business practices set forth above have and continue to

14  injure Plaintiffs, the Class, and the general public and cause the loss of money.  These violations

15  have unjustly enriched Defendants at the expense of Plaintiff and the Class.  As a result, Plaintiff,

16  the Class and the general public are entitled to injunctive relief, restitution, and other equitable

17  relief.

18  <u>**COUNT II**</u>

19  **(VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT,
    CALIFORNIA CIVIL CODE §§ 1750, *ET SEQ.*)**

20

21         66.     Plaintiff incorporates all preceding and succeeding allegations by reference as if

22  fully set forth herein.

23         67.     The CLRA's protections, like the UCL's, are cumulative and, therefore, are "in

24  addition to any other procedures or remedies for any violation or conduct provided for in any

25  other law."  Cal. Civ. Code § 1752.

26         68.     Both Defendants are "persons" as that term is defined in Cal Civ. Code § 1761

27  because each is an "individual, partnership, corporation, limited liability company, association, or

28  other group, however organized."

69.     The transactions described herein were "transactions" as that term is defined in Cal. Civ. Code § 1761 because they constituted an "agreement between a consumer and any other person, whether or not the agreement is a contract enforceable by action, and includes the making of, and the performance pursuant to, that agreement."

70.     The transactions at issue involve "goods" as that term is defined in Cal. Civ. Code § 1761 because they involve purchase and sale of PS3 video gaming systems and Final Fantasy XIII video games, which are tangible chattel bought to be used primarily for personal, family, or household purposes.

71.     By entering into the subject transactions to purchase PS3 and Final Fantasy XIII products, Plaintiff and the members of the Class are "consumers" as that term is defined in Cal. Civ. Code § 1761 because they sought, by purchase, goods and services for personal, family, or household use.

72.     Venue is proper pursuant to Civil Code § 1780(c) because Sony Computer Entertainment resides and has its principle place of business in San Mateo County.  A Declaration of the Plaintiff establishing this Court as the proper venue for this action is attached hereto as Exhibit A.

73.     Cal. Civ. Code § 1761 broadly defines the term "services," as follows:  "Services" means work, labor, and services for other than a commercial or business use, including services furnished in connection with the sale or repair of goods."

74.     Defendants have each violated California Civil Code §§ 1770(a)(5) and (7).  These provisions state:

> (a) The following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful:

> * * *

> (5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have.

> * * *

(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.

75.     In violation of Cal. Civ. Code, § 1770(a)(5), Defendant Sony represented that its PS3 systems were capable of playing PS3-branded and labeled video games.  As alleged herein, Defendant Sony's PS3 product could not play certain PS3 games, including Final Fantasy XIII, without suffering malfunctioning, freezing, and total inoperation.  Defendant Square Enix violated § 1770(a)(5) by representing that its Final Fantasy XIII game for PS3 could be played safely and normally on PS3 systems.  In actuality, Final Fantasy XIII could not be played on PS3 units without the risk of malfunctioning, freezing, and even total inoperation of both the game and the PS3 system.

76.     In violation of California Civil Code, § 1770(a)(7), Defendant Sony represented that its PS3 product was of a certain quality and grade that it could play PS3 games safely and normally.  Instead, as described herein, the PS3 could not play certain PS3 games, including Final Fantasy XIII, without suffering malfunctioning, freezing, and total inoperation.  Similarly, Defendant Square Enix represented its Final Fantasy XIII game was of a certain quality and grad that it could be played on the PS3 system safely.  Instead, as described herein, Final Fantasy XIII could not be played on PS3 systems without subjecting both the game and the system to substantial risk of malfunctioning, freezing, and total inoperation.

77.     Defendants' violation of Cal. Civ. Code § 1770 have caused damage to Plaintiff and members of the Class and threaten additional injury if the violations continue.  This damage includes the loss of the advertised utility of the products purchased by Plaintiff and members of the Class and monies paid by Class members for repairs that should have been paid by Defendants.

78.     In accordance with section 1782(a) of the CLRA, Civ. Code § 1782(a), on June 1, 2010, Plaintiff's counsel, on behalf of Plaintiff Wolf, served Sony Computer Entertainment America Inc., Square Enix of America Holdings, Inc., and Square Enix, Inc., by certified mail, return receipts requested, with notices of their alleged violations of CLRA §§ 1770(a)(5) and (7)

1  relating to the Playstation 3 and Final Fantasy XIII game owned by Wolf.  True and correct

2  copies of these notices are attached hereto as Exhibits B, C, and D.

3    79.    Notwithstanding Plaintiff's demand for correction, repair, replacement or other

4  remedy of the alleged violations of the CLRA, the Defendants have not given, or agreed to give

5  within a reasonable time, an appropriate correction, repair, replacement, or other remedy within

6  30 days after receipt of the notices.  Thus, Plaintiff and Class members are entitled to seek and

7  recover actual damages, punitive damages, and any other relief which this Court deems proper

8  against the Defendants.

9  **COUNT III**

10  **(BREACH OF EXPRESS WARRANTY)**

11    80.    Plaintiff incorporates all preceding and succeeding allegations by reference as if

12  fully set forth herein.

13    81.    Plaintiff Square Enix made express warranties to consumers.  Among other

14  express warranties, Plaintiff Square Enix warranted to its "customers" and "original consumer

15  purchasers" that its Final Fantasy XIII product "will be free from defects in materials and

16  workmanship for a period of ninety (90) days from the date of purchase[.]"

17    82.    Final Fantasy XIII was released for sale in the United States on March 9, 2010,

18  less than 90 days prior to the commencement of this action.  Therefore, Plaintiff and all members

19  of the Class are within the warranty period.  Defendant Square Enix has received notice, by this

20  lawsuit among other means, that its Final Fantasy XIII product is not free from defects in

21  materials and workmanship.  To the contrary, as alleged herein, Final Fantasy XIII contains

22  material defects in design, manufacture, or otherwise.

23    83.    Despite being notified repeatedly by consumers, including Plaintiff, that its Final

24  Fantasy XIII product is defective, Defendant Square Enix has only offered to send consumers a

25  replacement disc of the same kind that caused consumers' injury in the first place.

26    84.    It has been reported that replacement discs pose the same risk of damage to

27  themselves and PS3 game systems.  On information and belief, Defendant any Final Fantasy XIII

28  replacement disc is as faulty and defective as any other.  Defendant Square Enix has refused to

1   repair the PS3 systems for those who suffered injury by purchasing and playing Final Fantasy

2   XIII for PS3.

3        85.    Defendant Sony made express warranties to purchasers of PS3 gaming systems.

4   Among other express warranties, Sony warranted to "the original purchaser" that "the PS3

5   hardware shall be free from material defects in material and workmanship for a period of one (1)

6   year from the original date of purchase[.]"

7        86.    Defendant Sony breached its express warranties by providing a product that could

8   not play certain PS3 games, such as Final Fantasy XIII, without suffering malfunctioning,

9   freezing, and even total inoperation or "bricking."

10        87.    Defendant Sony has received notice, by this lawsuit among other means, that its

11   PS3 product is not free from defects in materials and workmanship.  To the contrary, as alleged

12   herein, PS3 contains material defects in design, manufacture, or otherwise.

13        88.    Defendants have each breached their express warranties by providing products that

14   have or are reasonably certain to fail before applicable warranty coverage periods or useful life of

15   the products.

16        89.    As a direct, proximate and foreseeable cause of Defendants' breach of express

17   warranty, Plaintiff and members of the proposed Class have sustained damages, in the aggregate,

18   in excess of $50,000.00.

19   **<u>COUNT IV</u>**

20   **(BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY)**

21        90.    Plaintiff incorporates all preceding and succeeding allegations by reference as if

22   fully set forth herein.

23        91.    By operation of law, Defendant Sony provided an implied warranty of

24   merchantability with each of the PS3 units at issue, warranting that they were of merchantable

25   quality and, among other things, that the PS3 units were fit for the ordinary purpose for which

26   such goods are used, such as playing video games labeled and co-branded as compatible with the

27   PS3 system.

28

92.     Defendant Sony breached its implied warranties by providing PS3's that could not play certain games, including Final Fantasy XIII, without suffering malfunctioning, freezing, and even being rendered totally inoperable.  The defect in Sony's product that caused these problems existed at the time of sale.

93.     Defendant Sony has received timely notice of its breaches from Plaintiff and members of the Class via telephone, its website, and in other ways.  Despite being notified, Defendant Sony has not provided Plaintiff and members of the Class a product that conforms to the qualities and characteristics that Defendant Sony warranted when it sold the PS3 products.  Instead, Defendant Sony has offered to charge Plaintiff and the Class up to $200 to fix their broken PS3's.

94.     By operation of law, Defendant Square Enix provided an implied warranty of merchantability with each of the Final Fantasy XIII units at issue, warranting that they were of merchantable quality and, among other things, that the game was fit for the ordinary purpose for which such goods are used, such as playing it on the PS3 system.

95.     Defendant Square Enix breached its implied warranties by providing a Final Fantasy XIII product that could not be played on the PS3 system without suffering malfunctioning, freezing, and even being rendered totally inoperable.  Final Fantasy XIII further caused the PS3 systems on which it was played to suffer malfunctioning, freezing, and, ultimately, total inoperation.  The defect in Square Enix's product that caused these problems existed at the time of sale.

96.     Defendant Square Enix has received timely notice of its breaches from Plaintiff and members of the Class via telephone and in other ways.  Despite being notified, Defendant Square Enix has not provided Plaintiff and members of the Class a product that conforms to the qualities and characteristics that Defendant Square Enix warranted when it sold the Final Fantasy XIII products at issue.  While Defendant Square Enix has offered to provide replacement discs in certain situations, those replacement discs have been reported to cause the same problems described herein.  Because Defendant Square Enix has refused to repair the damage caused by its

Final Fantasy XIII product, such replacement discs cannot be used with fear of incurring economic loss far greater than the value of the Final Fantasy XIII game itself.

97.     As a direct, proximate and foreseeable cause of Defendants' breach of the implied warranty of merchantability, Plaintiff and members of the proposed Class have sustained damages, in the aggregate, in excess of $50,000.00.

## COUNT V

### (STRICT PRODUCT LIABILITY)

98.     Plaintiff incorporates all preceding and succeeding allegations by reference as if fully set forth herein.

99.     Defendant Square Enix is strictly liable for the property damage caused by its Final Fantasy XIII product to the PS3 systems of Plaintiff and Members of the Class.

100.    Defendant Sony is also strictly liable.  Final Fantasy XIII is co-branded and sold under the PS3 name and trademark.  The packaging and game disc itself are prominently marked with the Playstation, PS3 and PlayStation Network names and trademarks.

101.    Further, on information and belief, Defendant Sony was the co-designer of Final Fantasy XIII and provided specifications and other design and manufacturing support necessary to ensure compatibility of the game with PS3 systems.  On information and belief, Defendants Sony and Square Enix shared in the profits generated by their co-branded, co-designed product.

102.    Final Fantasy XIII game discs reached Plaintiff and members of the Class without substantial change in its condition.

103.    Plaintiff and members of  the Class used the product in the manner intended, namely, as a PS3 video game within a PS3 system.

104.    Plaintiff and members of the Class were not aware of any defect in Final Fantasy XIII game discs at the time of purchase.

105.    Final Fantasy XIII poses a risk of causing PS3 systems to malfunction, freeze, and become totally inoperable and, in fact, has caused these injuries to property on a widespread basis.  Final Fantasy XIII is unsafe for its intended use.

106.     As a direct and proximate result of the defect inherent in Final Fantasy XIII, Plaintiff and members of the Class suffered injury to their PS3 systems and incurred damages.

**COUNT VI**

**(NEGLIGENCE)**

107.     Plaintiff incorporates  all preceding and succeeding allegations by reference as if fully set forth herein.

108.     Defendant Square Enix had a duty to its customers who purchased its Final Fantasy XIII game disc that was labeled and co-branded as compatible with the PS3 gaming system.  Defendant Square Enix had a duty to exercise reasonable care in designing, manufacturing, testing, processing, advertising, and marketing Final Fantasy XIII for PS3.

109.     Defendant Square Enix breached this duty by failing to exercise reasonable care in designing, manufacturing, testing, processing, advertising, and marketing Final Fantasy XIII for PS3.

110.     Defendant Sony is also liable for negligence.  Final Fantasy XIII is co-branded and sold under the PS3 name and trademark.  The packaging and game disc itself are prominently marked with the Playstation, PS3 and PlayStation Network names and trademarks.

111.     Further, on information and belief, Defendant Sony was the co-designer of Final Fantasy XIII and provided specifications and other design and manufacturing support necessary to ensure compatibility of the game with PS3 systems.  On information and belief, Defendants Sony and Square Enix shared in the revenue generated by co-branded, co-designed Final Fantasy XIII product.

112.     In the alternative, the damage suffered by Plaintiff and members of the Class were caused by the acts or omissions of Defendants.  These acts or omissions may be beyond proof by Plaintiffs herein, but were within the knowledge and control of Defendants, there being no other possible conclusion than the malfunctioning or bricking of PS3's and the Final Fantasy XIII game resulted from the negligence of Defendants.  The injuries suffered by Plaintiff and the Class are the type that would not normally occur absent Defendants' negligence.  The design, development

1     and manufacture of Final Fantasy XIII was under the control of Defendants Square Enix and

2     Sony, and thus Defendants are liable under the doctrine of *res ipsa loquitur*.

3         113.     As a direct and proximate cause of Defendant Square Enix's conduct, Final

4     Fantasy XIII for PS3 performed defectively and caused consumers' PS3 gaming systems to

5     malfunction, freeze, crash and become totally inoperable, as described herein.

6         114.     Plaintiff and members of the Class have been damaged as a direct and proximate

7     result of the Defendants' negligence.

8 <div align="center">**<u>COUNT VII</u>**</div>

9 <div align="center">**(ALTERNATIVE RELIEF BASED ON QUASI-CONTRACT)**</div>

10         115.     Plaintiff incorporates all preceding and succeeding allegations by reference as if

11     fully set forth herein.

12         116.     There is a quasi-contract between Plaintiff and Defendants. Defendant Sony

13     expressly offered its PS3 game system for sale as a system capable of playing PS3-branded video

14     games. Defendant Square Enix expressly offered Final Fantasy XIII for sale as a game that was

15     compatible with the PS3 system. The game was co-branded with the Playstation, PS3, and

16     PlayStation Network marks prominently displayed on the front of the game's box. Plaintiff

17     accepted these offers and paid substantial sums of money to purchase the PS3 and Final Fantasy

18     XIII products.

19         117.     Defendants are each for-profit businesses. Plaintiff's purchase of a Defendants'

20     PS3 system and Final Fantasy XIII products enriched Defendants.

21         118.     Plaintiff performed his obligations under the contract by paying for the products

22     and using them as they were intended to be used.

23         119.     Defendants each breached the contract. Defendant Sony did not provide a PS3

24     product that was capable of playing all PS3 games, as it was indicated to do. Defendant Square

25     Enix did not provide a Final Fantasy XIII video game that could be played safely on the PS3

26     system, as it was indicated to do. To the contrary, when Plaintiff played the co-branded, PS3

27     version of Final Fantasy XIII on his PS3 system, the system was rendered inoperable.

28

1    120.    Plaintiff lost money and Defendants were unjustly enriched as a result of the

2  misconduct described herein.  Defendants received the full benefit of Plaintiff's purchase money,

3  while providing Plaintiff with products that had little or no value because they could not work

4  together as indicated.

## X.  PRAYER FOR RELIEF

6    WHEREFORE, Plaintiff requests that the Court grant the following relief:

7    A.    An Order certifying this case as a class action pursuant to Fed. R. Civ. P. 23,

8  appointing Plaintiff Daniel Wolf as Class Representative, and Zimmerman Reed, PLLP and Lieff

9  Cabraser Heimann & Bernstein, LLP as Class Counsel;

10    B.    An award of restitution to Plaintiff and the Class;

11    C.    An award of damages to Plaintiff and the Class;

12    D.    An order of all equitable relief allowed by law;

13    E.    An order requiring Defendants to pay reasonable attorneys' fees, costs and

14  disbursements;

15    F.    All other relief allowed at equity or law;

16    G.    All other relief the Court deems just and proper in the circumstances.

18  Dated: July 15, 2010                    Respectfully submitted,

19                              LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

21                              By: /s/ Kristen Law Sagafi
22                                 Kristen Law Sagafi

23                              Kristen Law Sagafi (State Bar No. 222249)
                               LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
24                              275 Battery Street, 29th Floor
                               San Francisco, CA  94111-3339
25                              Telephone:  (415) 956-1000
                               Facsimile:  (415) 956-1008
26                              ksagafi@lchb.com

1
        Jonathan D. Selbin (State Bar No. 170222)
        LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
2
        250 Hudson Street, 8th Floor
        New York, NY 10013-1413
3
        Telephone:  (212) 355-9500
        Facsimile:  (212) 355-9592
4
        jselbin@lchb.com

5
        J. Gordon Rudd, Jr. (MN Bar No. 222082)
        David M. Cialkowski (MN Bar No. 306526)
6
        Brian C. Gudmundson (MN Bar No. 336695)
        ZIMMERMAN REED, PLLP
7
        651 Nicollet Mall, Suite 501
        Minneapolis, MN  55402
8
        Telephone:  (612) 341-0400
        Facsimile:  (612) 341-0844
9
        Gordon.Rudd@zimmreed.com
        David.Cialkowski@zimmreed.com
10
        Brian.Gudmundson@zimmreed.com

11
        *Attorneys for Plaintiff and the Class*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

885098.1

- 26 -

CLASS ACTION COMPLAINT
CASE NO. _____

1

## JURY DEMAND

2    Plaintiff hereby respectfully requests a trial by jury on all issues so triable.

3    Dated: July 15, 2010                LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

4

5                                        By:  /s/ Kristen Law Sagafi
                                              Kristen Law Sagafi
6
                                         Kristen Law Sagafi (State Bar No. 222249)
7                                        LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
                                         275 Battery Street, 29th Floor
8                                        San Francisco, CA  94111-3339
                                         Telephone:  (415) 956-1000
9                                        Facsimile:  (415) 956-1008
                                         ksagafi@lchb.com
10
                                         Jonathan D. Selbin (State Bar No. 170222)
11                                       LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
                                         250 Hudson Street, 8th Floor
12                                       New York, NY 10013-1413
                                         Telephone:  (212) 355-9500
13                                       Facsimile:  (212) 355-9592
                                         jselbin@lchb.com
14
                                         J. Gordon Rudd, Jr. (MN Bar No. 222082)
15                                       David M. Cialkowski (MN Bar No. 306526)
                                         Brian C. Gudmundson (MN Bar No. 336695)
16                                       ZIMMERMAN REED, PLLP
                                         651 Nicollet Mall, Suite 501
17                                       Minneapolis, MN  55402
                                         Telephone:  (612) 341-0400
18                                       Facsimile:  (612) 341-0844
                                         Gordon.Rudd@zimmreed.com
19                                       David.Cialkowski@zimmreed.com
                                         Brian.Gudmundson@zimmreed.com
20
                                         *Attorneys for Plaintiff and the Class*
21

22

23

24

25

26

27

28

885098.1

CLASS ACTION COMPLAINT
CASE NO. _____

# Exhibit A

# DECLARATION OF DANIEL WOLF

I, Daniel Wolf, declare as follows:

1.      I am a Plaintiff in the accompanying Class Action Complaint entitled *Wolf v. Sony Computer Entertainment America Inc., et al.*  I submit this declaration in support of the Class Action Complaint which seeks damages and other relief pursuant to the Consumers Legal Remedies Act (California Civil Code § 1750, *et seq.*).

2.      Pursuant to Civil Code §1780(d), I hereby affirm that the County of San Mateo is the proper place for the trial of the action because defendant Sony Computer Entertainment America resides and has its principle place of business in this county.  Each defendant sued herein is or was at all relevant times doing business in the County of San Mateo.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that I executed this declaration on May 27, 2010 at San Diego, California.


*Daniel C Wolf*

Daniel Wolf

# Exhibit B



# Track & Confirm

### Search Results

Label/Receipt Number: **7190 0005 3320 0001 1592**
Service(s): **Certified Mail™**
Status: **Delivered**

Your item was delivered at 9:41 AM on June 4, 2010 in SAN MATEO, CA 94404.

**Track & Confirm**

Enter Label/Receipt Number.

Go >

### Notification Options

**Track & Confirm by email**

Get current event information or updates for your item sent to you or others by email.   Go >

Site Map   Customer Service   Forms   Gov't Services   Careers   Privacy Policy   Terms of Use   Business Customer Gateway

**Copyright© 2010 USPS. All Rights Reserved.**   No FEAR Act EEO Data   FOIA

 ZIMMERMAN REED
ATTORNEYS AT LAW

# <u>NOTICE OF VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT</u>

June 1, 2010

*Via Certified United States Mail*    71 9000 0533 2000 0115 92

Sony Computer Entertainment America Inc.
919 E Hillsdale Blvd, 2nd Floor, Legal Department
Foster City, CA  94404

*RE: Violation of California Consumers Legal Remedies Act, Cal. Civ. Code §1750, et seq.*

Dear Sony Computer Entertainment America Inc.:

**PLEASE TAKE NOTICE** that this letter constitutes notice under § 1782 of the California Legal Remedies Act ("CLRA") that Sony Computer Entertainment America Inc. ("Sony") has violated § 1770 of the CLRA by its failure to provide a Playstation 3 ("PS3") gaming system of a quality and capable of performing as represented to Daniel Wolf, and a Class of persons throughout the United States similarly situated.  Daniel Wolf, by and through his undersigned counsel, hereby demands that within thirty (30) days, Sony remedy the violations alleged herein as to Mr. Wolf and all consumers similarly situated.

In 2007, Mr. Wolf purchased a PS3 gaming system under the belief that the system was capable of playing all PS3-designated compatible games without damage to the system or the threat of damage.  Sony represented to Mr. Wolf that its PS3 systems were, in fact, capable of playing PS3-designated games.

In March 2010, Mr. Wolf purchased the PS3-branded game Final Fantasy XIII and attempted to play it on his PS3 system.  Upon trying to save the game, it froze.  Mr. Wolf was not able to restart the system despite following all of the troubleshooting protocols suggested by Sony.  Mr. Wolf's PS3 was rendered totally inoperable as a result of playing the PS3-branded video game Final Fantasy XIII.

Mr. Wolf is not the only one whose PS3 system was damaged by playing the PS3-branded Final Fantasy XIII.  Mr. Wolf seeks to represent a Class of thousands of consumers who suffered similar damage to their PS3 systems as a result of playing Final Fantasy XIII.  As with Mr. Wolf, Sony represented to all of these consumers that their PS3 systems would be able to play PS3-compatible games.   All of these consumers suffered damage and economic loss as a result of doing just that.

Please be advised that these alleged practices constitute violations of the CLRA including but not limited to:

**MINNEAPOLIS** | 651 NICOLLET MALL, SUITE 501  MINNEAPOLIS, MINNESOTA 55402   TEL 612.341.0400  FAX 612.341.0844   ZIMMREED.COM

**SCOTTSDALE** | 14646 NORTH KIERLAND BLVD, SUITE 145  SCOTTSDALE, ARIZONA 85254   TEL 480.348.6400  FAX 480.348.6415   ZIMMREED.COM

**Re:** *Violation of California Consumer Legal Remedies Act, Cal. Civ. Code §1750, et. seq.*
Page 2
June 1, 2010

1. § 1770(a)(5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have; and

2. § 1770(a)(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.

Please be further advised that Sony's failure to comply with this request within thirty (30) days may subject it to the following remedies for violation of the CLRA: (1) actual damages suffered; (2) an order enjoining violative methods, acts or practices; (3) restitution of property (when applicable); (4) punitive damages; (5) court costs and attorneys' fees; and (6) any other relief a court of competent jurisdiction deems proper.  In addition, California Civil Code, § 1780(b) provides that, "Any consumer who is a senior citizen or a disabled person, as defined in subdivisions (f) and (g) of § 1761, as part of any action under subdivision (a) may be awarded in addition to the remedies specified therein, up to five thousand dollars ($5,000)...."

Thank you for your attention to this matter.  Please contact me any time should you wish to discuss.

Very truly yours,

ZIMMERMAN REED, P.L.L.P.

Brian C. Gudmundson

BCG: jlt

# Exhibit C




UNITED STATES POSTAL SERVICE®

Home | Help | Sign In

Track & Confirm FAQs

# Track & Confirm

## Search Results

Label/Receipt Number: **7190 0005 3320 0001 1585**
Service(s): **Certified Mail™**
Status: **Delivered**

Your item was delivered at 11:28 AM on June 3, 2010 in EL SEGUNDO, CA 90245.

Track & Confirm
Enter Label/Receipt Number.
Go >

## Notification Options

**Track & Confirm by email**

Get current event information or updates for your item sent to you or others by email. Go >

Site Map Customer Service Forms Gov't Services Careers Privacy Policy Terms of Use Business Customer Gateway

Copyright© 2010 USPS. All Rights Reserved. No FEAR Act EEO Data FOIA

ZIMMERMAN REED
ATTORNEYS AT LAW

## <u>NOTICE OF VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT</u>

June 1, 2010

*Via Certified United States Mail*      71 9000 0533 2000 0115 85

Square Enix of America Holdings, Inc.
999 N. Sepulveda Blvd, 3rd Floor
El Segundo, CA  90245

*RE:  Violation of California Consumers Legal Remedies Act, Cal. Civ. Code §1750, et seq.*

Dear Square Enix of America Holdings, Inc.:

**PLEASE TAKE NOTICE** that this letter constitutes notice under § 1782 of the California Legal Remedies Act ("CLRA") that Square Enix of America Holdings, Inc. has violated § 1770 of the CLRA by its failure to provide a Playstation 3 ("PS3") gaming system of a quality and capable of performing as represented to Daniel Wolf, and a Class of persons throughout the United States similarly situated.  Daniel Wolf, by and through his undersigned counsel, hereby demands that within thirty (30) days, Square Enix of America Holdings, Inc., Inc. remedy the violations alleged herein as to Mr. Wolf and all consumers similarly situated.

In March 2010, Mr. Wolf purchased the PS3-labeled game Final Fantasy XIII and attempted to play it on his PS3 system.  Square Enix of America Holdings, Inc. represented to Mr. Wolf that he would be able to play the PS3-labeled version of Final Fantasy XIII normally on the PS3 system, and without the threat of or actual damage to the PS3.  Upon trying to play the game, however, Mr. Wolf's PS3 froze and was rendered totally inoperable.  Mr. Wolf was never able to restart the system properly and can no longer play Final Fantasy XIII or any other game or movie disc on the system.  Mr. Wolf's PS3 was rendered totally inoperable as a result of playing the PS3-branded video game Final Fantasy XIII.

Mr. Wolf is not the only one whose PS3 system was damaged by playing Final Fantasy XIII.  Mr. Wolf seeks to represent a Class of thousands of consumers who suffered similar damage to their PS3 systems as a result of playing Final Fantasy XIII.  As with Mr. Wolf, Square Enix of America Holdings, Inc. represented to all of these consumers that the PS3-labeled version of Final Fantasy XIII could be played safely and normally on the PS3 system.  All of these consumers suffered damage and economic loss as a result of doing just that.

Please be advised that these alleged practices constitute violations of the CLRA including but not limited to:

**MINNEAPOLIS** | 651 NICOLLET MALL, SUITE 501  MINNEAPOLIS, MINNESOTA 55402  TEL 612.341.0400  FAX 612.341.0844  ZIMMREED.COM

**SCOTTSDALE** | 14646 NORTH KIERLAND BLVD, SUITE 145  SCOTTSDALE, ARIZONA 85254  TEL 480.348.6400  FAX 480.348.6415  ZIMMREED.COM

**Re:** *Violation of California Consumer Legal Remedies Act, Cal. Civ. Code §1750, et. seq.*
Page 2
June 1, 2010

1. § 1770(a)(5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have; and

2. § 1770(a)(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.

Please be further advised that Square Enix of America Holdings, Inc.'s failure to comply with this request within thirty (30) days may subject it to the following remedies for violation of the CLRA: (1) actual damages suffered; (2) an order enjoining violative methods, acts or practices; (3) restitution of property (when applicable); (4) punitive damages; (5) court costs and attorneys' fees; and (6) any other relief a court of competent jurisdiction deems proper. In addition, California Civil Code, § 1780(b) provides that, "Any consumer who is a senior citizen or a disabled person, as defined in subdivisions (f) and (g) of § 1761, as part of any action under subdivision (a) may be awarded in addition to the remedies specified therein, up to five thousand dollars ($5,000)...."

Thank you for your attention to this matter. Please contact me any time should you wish to discuss.

Very truly yours,

ZIMMERMAN REED, P.L.L.P.

Brian C. Gudmundson
BCG: jlt

# Exhibit D



**UNITED STATES POSTAL SERVICE**®

Home | Help | Sign In

Track & Confirm        FAQs

## Track & Confirm

### Search Results

Label/Receipt Number: **7190 0005 3320 0001 1578**
Service(s): **Certified Mail**™
Status: **Delivered**

Your item was delivered at 11:28 AM on June 3, 2010 in EL SEGUNDO, CA 90245.

**Track & Confirm**

Enter Label/Receipt Number.

Go >

### Notification Options

**Track & Confirm by email**
Get current event information or updates for your item sent to you or others by email.   Go >

Site Map    Customer Service    Forms    Gov't Services    Careers    Privacy Policy    Terms of Use    Business Customer Gateway

Copyright© 2010 USPS. All Rights Reserved.    No FEAR Act EEO Data    FOIA

# NOTICE OF VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT

June 1, 2010

*Via Certified United States Mail*    71 9000 0533 2000 0115 78

Square Enix, Inc.
999 N. Sepulveda Blvd, 3rd Floor
El Segundo, CA 90245

*RE:  Violation of California Consumers Legal Remedies Act, Cal. Civ. Code §1750, et seq.*

Dear Square Enix, Inc.:

**PLEASE TAKE NOTICE** that this letter constitutes notice under § 1782 of the California Legal Remedies Act ("CLRA") that Square Enix, Inc. has violated § 1770 of the CLRA by its failure to provide a Playstation 3 ("PS3") gaming system of a quality and capable of performing as represented to Daniel Wolf, and a Class of persons throughout the United States similarly situated.  Daniel Wolf, by and through his undersigned counsel, hereby demands that within thirty (30) days, Square Enix, Inc. remedy the violations alleged herein as to Mr. Wolf and all consumers similarly situated.

In March 2010, Mr. Wolf purchased the PS3-labeled game Final Fantasy XIII and attempted to play it on his PS3 system.  Square Enix, Inc. represented to Mr. Wolf that he would be able to play the PS3-labeled version of Final Fantasy XIII normally on the PS3 system, and without the threat of or actual damage to the PS3.  Upon trying to play the game, however, Mr. Wolf's PS3 froze and was rendered totally inoperable.  Mr. Wolf was never able to restart the system properly and can no longer play Final Fantasy XIII or any other game or movie disc on the system.  Mr. Wolf's PS3 was rendered totally inoperable as a result of playing the PS3-branded video game Final Fantasy XIII.

Mr. Wolf is not the only one whose PS3 system was damaged by playing Final Fantasy XIII.  Mr. Wolf seeks to represent a Class of thousands of consumers who suffered similar damage to their PS3 systems as a result of playing Final Fantasy XIII.  As with Mr. Wolf, Square Enix, Inc. represented to all of these consumers that the PS3-labeled version of Final Fantasy XIII could be played safely and normally on the PS3 system.  All of these consumers suffered damage and economic loss as a result of doing just that.

Please be advised that these alleged practices constitute violations of the CLRA including but not limited to:

**Re:** *Violation of California Consumer Legal Remedies Act, Cal. Civ. Code §1750, et. seq.*
Page 2
June 1, 2010

1. § 1770(a)(5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have; and

2. § 1770(a)(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.

Please be further advised that Square Enix, Inc.'s failure to comply with this request within thirty (30) days may subject it to the following remedies for violation of the CLRA: (1) actual damages suffered; (2) an order enjoining violative methods, acts or practices; (3) restitution of property (when applicable); (4) punitive damages; (5) court costs and attorneys' fees; and (6) any other relief a court of competent jurisdiction deems proper.  In addition, California Civil Code, § 1780(b) provides that, "Any consumer who is a senior citizen or a disabled person, as defined in subdivisions (f) and (g) of § 1761, as part of any action under subdivision (a) may be awarded in addition to the remedies specified therein, up to five thousand dollars ($5,000)...."

Thank you for your attention to this matter.  Please contact me any time should you wish to discuss.

Very truly yours,

ZIMMERMAN REED, P.L.L.P.

Brian C. Gudmundson
BCG: jlt